# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
           FILED

   AUG - 1 2012

CLERK, U.S. DISTRICT COURT
By_____
            Deputy
```

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION: § | |
| UNITED STATES OF AMERICA FOR § | |
| AN ORDER AUTHORIZING THE § | |
| MONITORING OF A GLOBAL § | |
| POSITIONING SYSTEM MOBILE § | No. 4:12-MJ-*319* |
| TRACKING DEVICES ASSIGNED TO: § | (UNDER SEAL) |
| THE AT&T CELLULAR § | |
| TELEPHONE ASSIGNED TO PERSONAL: § | |
| TELEPHONE NUMBER **(682) 300-7240** § | |
| AND CUSTOMER ID 1083486925 § | |
| ("TARGET DEVICE #1") § | |

## APPLICATION AND AFFIDAVIT OF PROBABLE CAUSE FOR GPS TRACKING DEVICE

I, Dao Nouanesengsy, being first duly sworn, depose and state under oath as follows:

1. I am submitting this affidavit in connection with an application for a court order to obtain global positioning ("GPS") data from TRACFONE (the "TARGET CELLPHONE"). I submit this affidavit in support of an application for an order pursuant to Federal Rule of Criminal Procedure 41, authorizing agents of Drug Enforcement Administration (DEA) to ascertain the physical location of the cellular telephone, **(682) 300-7240**, subscribed to Keoudone Ekasone or Elasone, 2801 Aster Avenue, Fort Worth, Texas 76111, its service provided by a prepaid TRACFONE and subscribed to Customer name, 1083486925 1083486925, Customer ID 1083486925, Serial number 012794004464503 and SIM number 89014103254485798270, with contact information listed to (817) 757-5511, Keoudone Ekasone, 2801 Aster Avenue, Fort Worth, TX 76111. The cooperation of AT&T (the "TARGET CELLPHONE") on matters including

**Application and Affidavit for GPS Tracking Device - Page - 1**

but not limited to the E-911 Phase II data (or other precise location information) concerning the TARGET CELLPHONE (the "Requested Information"),[1] is desired for a period of thirty (30) days.

2.  I am a Special Agent (SA) of Drug Enforcement Administration (DEA).  I have been an SA for nearly nine (9) years and am currently assigned to the DEA Dallas Field Division, Dallas, Texas, Enforcement Group 2.  As a DEA SA, I am familiar with the operation of Drug Trafficking Organizations ("DTO") and the methods used in the transportation of narcotics and cash proceeds.  I have used a variety of methods during investigations including, but not limited to, visual surveillance, general questioning of witnesses, and the use of search warrants, confidential informants, and pen registers.  Furthermore, I have been an Affiant in a Title III wire intercept, GPS tracking orders, as well as search and arrest warrants.  By virtue of my employment with DEA, I am authorized to conduct investigations into violations involving individuals inducing narcotics into the United States and the concomitant smuggling of cash.

3.  Based on my training and experience relating to the investigation of narcotics smuggling, and the interviews I have conducted with defendants, informants, other witnesses, and participants in narcotic smuggling activity, I am intimately familiar with the ways that DTO's conduct their business.  My familiarity includes the various means and methods by which DTO's illegally smuggle and transport narcotics; their use of

---

[1] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the TARGET CELLPHONE at the start and end of any call.  In requesting cell site information, the Government does not concede that such cell site records – routinely retained by wireless carriers as business records – may only be obtained via a warrant issued on probable cause.  See In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.).

cellular telephones, digital display paging devices, and calling cards to facilitate narcotic and bulk cash smuggling activities; and their use of numerical codes and code words to conduct narcotic transactions. I am also familiar with the ways that DTO's conceal, convert, transmit, and transport their narcotics proceeds, including but not limited to, the use of carriers to transport currency and proceeds, and the use of third parties to purchase or hold title to assets.

4. I am currently participating in an investigation of a large-scale DTO responsible for the transportation and distribution of hydroponics marijuana throughout the United States. After the proceeds are collected for the marijuana, the organization transports the proceeds in bulk currency back to the Dallas/Fort Worth area and smuggles the proceeds to Vientiane, Laos.

5. Probable cause exists to believe that the Requested Information will constitute or lead to evidence of offenses involving drug trafficking, in violation of 21 U.S.C. §§ 841(a)(1) & 846 (the "TARGET OFFENSES"), as well as the identification of individuals who are engaged in the commission of the offenses.

6. For the reasons set out in this affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, and will continue to be committed by known individuals and others unknown. Further, there is probable cause to believe that an unknown individual is using the TARGET CELLPHONE to commit the TARGET OFFENSES.

**Target Device #1**

7. The cellular phone number **(682) 300-7240** (hereinafter Target Device #1) is believed to be utilized by Keoudone Ekasone, a member of the DTO operating in the Dallas/Fort Worth area.

8. In 2011, DEA Dallas initiated an investigation into a Laotian marijuana trafficking operation in the Dallas/Fort Worth, Texas area. Relying on sources and reliable intelligence during the course of the investigation, DEA agents were able to identify several marijuana cells headed by Mao and Pao Feuay, Bounnheuang and Sonedary Judy Outhavong, Phayboune Xaymongkhol and Bounseeum Senesoury, and Chantha, Oat, and Bounyiam Souvanna. All of them distribute large amounts of hydroponics marijuana throughout the United States.

9. In June 2012, DEA agents provided information to the Denton Police Department regarding Marcus Kurt Malone, residing in Roanoke, Texas, a retail marijuana distributor distributing in the Denton area.

10. On July 5, 2012, the Denton PD Narcotic Unit established probable cause and obtained a State of Texas Search Warrant for Malone's residence, 150 Parish Road, Apartment #1135, Roanoke, TX. Subsequent to the search, the Denton PD arrested Malone with approximately 2 pounds of marijuana and $54,940.00. Malone cooperated with agents and identified Keoudone Ekasone, who resides in Fort Worth, TX and has a cellular telephone number **(682) 300-7240 (Target 1)**, as his marijuana Source of Supply (SOS). **Target 1** is a prepaid TRACFONE and is subscribed to Customer name 1083486925 1083486925, Customer ID 1083486925, Serial number 012794004464503

and SIM number 89014103254485798270, with contact information under Keoudone

Ekasone or Elasone, **(817) 757-5511**, at 2801 Aster Avenue, Fort Worth, TX 76111.

Malone advised agents that Ekasone used his cellular telephone to communicate

and arrange drug transactions with his customers. Malone advised that the 2 pounds of

marijuana that were seized by the Denton PD belonged to Ekasone. Malone stated that

he and Ekasone conduct drug business based on a consignment agreement. Ekasone

charges Malone $3,400.00 per pound. Malone stated that he picked up the 2 pounds from

Ekasone on July 4, 2012. Ekasone is expecting $6,800.00 in couple of days. Ekasone

want all his money in $20 dollar bills.

11. On Friday, July 6, 2012, under the direction of several agents, Malone texted

and called **Target 1**, attempting to arrange a payment to Ekasone in the amount of

$6,800.00. Ekasone agreed to meet with Malone in Fort Worth, TX on Monday, July 9,

2012.

12. On July 9, 2012, Malone received an incoming text from Ekasone saying,

"I'm home." Agents directed Malone to meet with Ekasone and pay him $6,800.00.

During the telephonic conversation with Ekasone, Malone told him that Malone had his

money and Ekasone acknowledged this. Malone asked Ekasone for the directions to the

meeting location and asked him to text Malone the address. Ekasone then texted Malone

back with his address, "2801 Aster." A short time later, Malone arrived at Ekasone's

residence, 2801 Aster Avenue, Fort Worth. Surveillance observed Malone arrive and

enter the residence. Approximately 45 minutes later, Malone exited the residence and

departed the area.

At a pre-determined location, agents debriefed Malone.  Malone advised that when he was inside the residence, Ekasone had him count the money in front of him.  Ekasone then told Malone about how he was trying to build himself up.  Ekasone told Malone that he was looking to buy a HUMMER and ship it to Laos to resell for a profit.  Ekasone told Malone that he went to a car dealership and planned to purchase a HUMMER, worth $48,000.00-$50,000.00, to send it to Laos.  Additionally, Ekasone told Malone that he had already sent $100,000.00 to Laos.  Ekasone told Malone that he did not trust anyone.  Ekasone told Malone that he was presently only dealing with Malone and Kyle West.  West is a criminal associate of Malone and a customer of Ekasone.

After the meeting, surveillance observed Ekasone exit the residence and depart in a silver 2007 Infiniti, bearing Texas license plate 912-YCF, registered to Keoudone Ekasone, 3424 Tourist Drive, North Richland, TX.  Surveillance followed Ekasone to Chantha and Oat Souvanna's residence, 7133 Bob Hanger Street, Fort Worth, TX.  Surveillance observed Ekasone park his vehicle in the driveway and enter the residence.  A short time later, Ekasone exited the residence and departed the area.

Agents maintained surveillance at Souvanna's residence.  Surveillance observed Chantha Souvanna, or "TWEE," exit the residence and depart in a black BMW 335I, bearing Texas license plate CD3-G835, registered to Bouavanh Treeruttanakij, 7133 Bob Hanger Street, Fort Worth, TX 76179.  Souvanna was known to launder and structure drug proceeds for the organization.  Souvanna used cellular telephone **(682) 552-9176 (Target 2)** to conduct illegal activity for the organization. **Target 2's service provider** is AT&T and is subscribed to AAA-ARCADE (IMSI: 310410461106239 and IMEI/ESN:

013003003034138), 7133 Bob Hanger Street, Fort Worth, TX 76179, which is owned and operated by Souvanna. Surveillance followed Souvanna for a short distance and then terminated the surveillance.

13. The following day, DEA Civil Investigator contacted a representative of WINSTAR CASINO regarding Chantha Souvanna's activity at the casino. The representative of WINSTAR CASINO advised agents that Souvanna was at the casino and appeared to place $20 bills into the gaming machines and convert them into $100 dollar bills. The casino officials believed that Souvanna was engaging in illegal activity attempting to redeem a $2,500.00 prize in order to avoid reporting to the IRS.

14. Agents reviewed the 30 day tolls analysis frequency reports between **Target 1** and **Target 2**, which revealed that from June 10, 2012 to July 10, 2012, Ekasone and Souvanna communicated with each other via cellular telephones 128 times. Agents believed that Souvanna and Ekasone were using their cellular telephones to communicate with each other and conduct criminal activities.

## GPS DATA

15. I have confirmed with representatives of TRACFONE that TARGET DEVICE #1 is equipped with technology that sends global positioning ("GPS") data to be collected by TRACFONE. The GPS mobile tracking equipment was factory-installed within the device and it is our belief that it has remained with the device through the date of this affidavit. The equipment provides a link between the device and TRACFONE facilities, where the GPS mobile tracking equipment generates a signal that fixes the telephone's geographic position. The signal is then read by a satellite, which transmits

the location information in a form that TRACFONE computer systems are able to calculate and project on a map. Obtaining that GPS information on TARGET DEVICES #1 will aid the DEA in the investigation of the DTO, by providing and/or confirming the location(s) of marijuana stash houses and the residence(s) of associates and/or members of the criminal organization.

16. Based on the foregoing, there is probable cause to believe that the Requested Information will lead to evidence regarding the activities described above. The Requested Information is necessary to determine the location of Ekasone so that law enforcement agents can conduct physical surveillance of him in connection with future expected transactions. Furthermore, it is believed that the Requested Information will help enable the affiant to identify Ekasone, as well as others involved in the DTO, and other narcotic stash houses.

17. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41, it is requested that the Court issue a warrant and order authorizing agents of the DEA to obtain the Requested Information for a period of thirty (30) days.

18. IT IS FURTHER REQUESTED that the Court direct TRACFONE, the service provider for the TARGET CELLPHONE, **to assist agents of DEA by providing all information, facilities and technical assistance needed to ascertain the Requested Information; and that** TRACFONE, for a period of thirty (30) days, initiate a signal to determine the location and other reference points, as may be reasonably available and at such intervals and times as directed by the law enforcement agents, on the service provider's network and furnish the technical assistance necessary to accomplish the

**Application and Affidavit for GPS Tracking Device - Page - 8**

acquisition unobtrusively and with minimum interference that provider accords to the user(s) of the TARGET CELLPHONE.   Reasonable expenses incurred pursuant to this activity will be processed for payment by the DEA.

19.  IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELLPHONE outside of daytime hours.

20.  IT IS FURTHER REQUESTED that the warrant and this Affirmation, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against flight, and better ensure the safety of agents and others, except that working copies may be served on Special Agents and other investigative and law enforcement officers of DEA, federally deputized state and local law enforcement officers, other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and TRACFONE as necessary to effectuate the Court's Order.

21.  IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. 3103a(b) and

Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for

a period of 30 days after the termination of the monitoring period authorized by the

warrant or any extensions thereof.

_____
SA Dao Nouanesengsy
Drug Enforcement Administration


Sworn to and subscribed to before me this _____ day of August, 2012, in Fort Worth,
Texas.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE


**Application and Affidavit for GPS Tracking Device - Page - 10**